# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Glenn C. Rice, | : | Case No. 1:06CV2264 |
| | : | |
| Petitioner | : | Judge John R. Adams |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Stuart Hudson, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his January 9, 2003 conviction pursuant to a jury trial of five counts of rape, each of which contained a sexually violent predator specification, upon which he is  serving five consecutive sentences of ten years to life imprisonment.

Petitioner's convictions arose as a consequence of his repeated sexual attacks upon his young, physically disabled daughter.

On March 3, 2003 petitioner, acting through new counsel, appealed his convictions to the Ohio Eighth District Court of Appeals, alleging five assignments of error:

> I.    The court allowed impermissible hearsay testimony from alleged victim's mother in violation of Ohio Rule of Evidence 803(2), the Fifth, Sixth, Eighth and Fourteenth Amendment to the U.S. Constitution and Article I, Section 9 and 16 of the Ohio Constitution.

II.     The court allowed impermissible hearsay testimony from social workers in violation of Evidence Rule 803(4).

III.    The trial court erred by sustaining the prosecutor's objection to questions and testimony reflecting the prior inconsistent statements made by the alleged victim pursuant to Evidence Rule 806.

IV.    The trial court erred when it mistakenly instructed the jury that rape involved sexual contact not sexual conduct for counts two through four.

V.     Whether the guilty verdicts were against the manifest weight of the evidence.

The appellate court summarized the facts of the case as follows:

Appellant's convictions result from his relationship with the victim, his biological daughter, who was born prematurely on June 29, 1997. The difficult circumstances of the victim's birth afflicted her with the permanent physical disabilities of cerebral palsy, asthma, and a weakened constitution.

Over the course of her young life, the victim spent months in the hospital. She had limited voluntary control of her body; as a consequence, she required aid in performing the most basic daily tasks, including sitting, bathing, and elimination. By the age of nine months, moreover, she could eat so little that a gastrointestinal tube had to be placed in her stomach for purposes of maintaining her proper nutrition. In short, the victim required intensive personal care.

The victim however had no mental disabilities. Indeed, she performed well academically and had no difficulty expressing herself. Additionally, she was described as a beautiful child.

The victim's mother, "D," gave her primary care during the day. Since D worked away from the home at night, she depended upon appellant, whom she had married approximately a year after the victim's birth, to care for the victim almost equally. D trusted appellant, often "bragging" to her co-workers about his dedication to the nurture of the victim.

In August 2001, while assisting the four-year old victim to the

2

toilet, D noticed she seemed "upset" and irritable.  She asked the victim why she was "fidgeting."  The victim "complained***that her dad hurt her koo-koo.  And her koo-koo is what [D] raised all [her] girls to say as *** their vagina."  D hesitated before inquiring how he had done that.  The victim responded that "he stuck his finger in her koo-koo."

D quickly removed the victim to another room.  She presented a baby doll to her and told her to "show" D.  The victim placed her finger up under the doll where the vagina would be.

At that, D confronted appellant with the victim's complaint.  Appellant seemed "nervous"; he refused to remain still, walked away from D while he denied hurting the victim, and then, when D began to cry, became teary himself.  He agreed the victim should be taken to her pediatrician based upon her distress.

Appellant was present in the examining room during the victim's physical examination by the doctor.  The doctor found nothing conclusive.  D, nevertheless, contacted the county department of Children and Family Services, which, on August 16, 2001, assigned the matter to social worker Patricia Altier.

Altier went to the victim's home to conduct the preliminary interview.  After becoming acquainted with the victim by joining her in coloring, Altier asked the victim of she wanted to call someone on her play telephone.  The victim declared she would call her doctor.  During the play conversation, the victim told her doctor that "someone touched [her] kook."  Altier asked her who had done that, and the victim stated her "dad;" after making this statement, the victim made the words into a chant.

The victim's actions caused Altier to draw a female stick figure, which she presented to the victim for illustration.  As Altier asked for them, the victim identified correctly parts of the body for the figure.  The victim "pointed to the area between the stick figure's legs as her kook."  When Altier asked her what her dad had touched her with, the victim could not respond.

Altier then drew a male stick figure.  Once again, the victim could correctly point to parts of the body.  This time, when Altier asked what her dad touched her with, the victim pointed to the middle of the stick figure's legs.  As the victim now was becoming tired and upset, she refused further attempts at conversation.

Five days later, Altier arrived for an interview with another family member. Altier spoke to the victim briefly. Although the victim remembered they had "talked about her dad touching her kook," she refused to cooperate with any attempt to gain additional information; she "kept shoving" away the anatomically-correct picture of a male Altier placed in front of her.

Altier spoke to appellant as part of her investigative process. Upon being informed appellant bathed naked with the victim, Altier suggested he wear bathing trunks since the victim was getting older. Appellant's reaction showed he "thought that was a very strange request" and one he seemed unwilling to accept. Appellant, however, agreed to "take a sex offender assessment." Altier subsequently transferred the case to another social worker in the "sex abuse" unit, Lynetric Rivers, for ongoing evaluation.

Rivers thereafter communicated with and visited appellant's household at least monthly. When she spoke to appellant, she inquired about his referral for an assessment. Appellant never followed through, despite these constant reminders.

Over these months, D occasionally noticed the victim's clitoris was swollen, or she displayed a rash between her thighs. Each time, D made an appointment with the victim's pediatrician; each time, after a cursory examination, the pediatrician presented a reasonable explanation for the unusual physical condition.

By the late summer of 2002, the victim was five years old. She suffered a severe gastrointestinal attack which required a week of hospitalization. While awaiting the victim's discharge from the facility, D initiated a conversation with the victim about sexual matters.

Referring to a sexual organ like a girl's "koo-koo," D asked the victim if she knew what men had. The victim responded affirmatively, describing it as a "tail." D asked the victim if anyone had ever hurt her with one. The victim answered yes, and identified appellant as the one who had done so.

Not long thereafter, appellant entered the room. Upon seeing him, the victim excitedly blurted out, "Daddy, I told Mommy you hurt me with the– ," glanced back at D, then stopped.

This episode prompted D to contact Rivers. After informing Rivers

4

of the victim's most recent revelation, D also confronted appellant. Appellant "started crying and he fell on the ground." Although D also was highly upset, she eventually arrived at a point at which she could listen to him. Appellant ultimately agreed to do whatever Rivers suggested, and acknowledged that he was "going to get some help," because he was "sick."

D demanded appellant apologize to the victim. Together, they went to her room, where appellant stated he was "sorry [he] hurt [her] koo-koo." He promised "Daddy's not going to hurt your koo-koo no more." At D's prompting, appellant picked up the victim to give weight to his words. The victim "froze" as though she were frightened, attempted to twist away, and then "took a breath and she looked up at him and she said, And Daddy, you're not going to hurt me with that big thing, are you?"

With trepidation, D asked the victim what color the "big thing" was. When the victim said "purple," D's fear was realized: that was the color of the electronic dildo appellant used on D during sexual encounters. D at that point told appellant he had to leave the home.

Altier conducted a third interview with the victim shortly thereafter, on September 20, 2002; the victim remembered their previous meetings. Altier provided the victim with paper and asked her to whom she wanted to write. The victim told her , "my dad." Altier indicated she would write the words for the victim; the victim stated, "I want to tell dad to stop touching my koo-koo."

This time, when Altier presented her with anatomically-correct pictures, the victim indicated appellant had placed his penis "inside and it hurt." She further indicated she was mad at him because he had "yelled at her, he told her to shut up and was mean to her, and ***because he took her dress off." In addition, the victim described how appellant also had "put his finger in her but," which also "hurt." Prior to the conclusion of the session, the victim licked the penis area on the picture of the male "because that's what [her] dad [did] to her, he ma[de her] put [her] tongue on his tail."

In October 2002, appellant was indicted on five counts of rape. The first related to the August 2001 incident and contained an element of force; the next four contained furthermore clauses that set forth the age of the victim as under ten.

After appellant's departure from the home and his arrest on the

5

> foregoing charges, D noticed the victim began sleeping more
> soundly, sang and played more often, and generally seemed
> "relieved."

(Footnotes omitted.)

On September 29, 2003 the appellate court affirmed the judgment of conviction and

sentence.

On February 11, 2004 petitioner appealed the appellate court ruling to the Ohio Supreme

Court alleging the following propositions of law:

> **Proposition of Law No. I:** Defendant Glenn Rice right's [sic]
> under the United States Constitution and article 1 §10 of the Ohio
> Constitution was [sic] violated when the trial court allowed
> impermissible heresay [sic] testimony from the alleged victims [sic]
> mother and social worker in vilation [sic] of his rights to a fair trial.

> **Proposition of Law No. II:** The trial court denied defendant Glen
> Rice his rights to a fair trial in violation of the united [sic] States
> Constitution and article 1 §10 of the Ohio Constitution when the
> court abused its discretion by sustaining the prosecutions [sic]
> objections to questions and testimony reflecting the prior inconstent
> [sic] statements made by the victim.

> **Proposition of Law No. III:** The trial court denied Glen Rice his
> right to a fair trial as guranteed [sic] him under the United States
> Constitution and article 1 §10 of the Ohio Constitution when it gave
> erroneous jury instruction concerning the alleged offense of Rape.
> in [sic] counts two through four.

> **Proposition of Law No. IV:** Defendant Glen Rice was denied his
> right to a fair trial under the United States Constitution and article
> 1 §10 of the Ohio Constitution, when the court refused to dismiss
> the charges against him and sustaining the jurys [sic] verdict which
> was against the manifest weight of the evidence.

On May 26, 2004 the state supreme court denied petitioner leave to appeal and dismissed the

appeal as not involving any substantial constitutional question.  Petitioner did not appeal this

decision to the United States Supreme Court.

6

While his direct appeal was pending with the state supreme court, on March 26, 2004 petitioner filed with the lower appellate court an application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, claiming that he had been denied the effective assistance of appellate counsel by reason of counsel's failure to raise the following issues on appeal:

> 1. The trial court erred in failing to hold a competency hearing under Evid.R. 601 and the Fourteenth Amendment of the U.S. Constitution when the child declarant was 4 or 5 years old, suffered from cerebral palsy and had difficulty communicating verbally.
>
> 2. The trial court erred in failing to hold a hearing under Evid.R. 807 when counsel requested a hearing before trial and thus violated Mr. Rice's right to Due Process under the Fourteenth Amendment of the U.S. Constitution and his right to confrontation under the Sixth Amendment of the U.S. Constitution.
>
> 3. (A) Evid.R. 803(2) and Evid.R. 807 violate the confrontation clause of the Sixth Amendment of the U.S. Constitution under *Crawford v. Washington*, 124 S.Ct. 1354 (2004).
>
> 3. (B) Trial counsel was ineffective under the Sixth and Fourteenth Amendments for failing to challenge the constitutionality of Evid.R. 803.
>
> 4. The trial court erred when it failed to comply with R.C. 2929.11(B), *State v. Comer*, 99 Ohio St.3d 463 (2003), and *State v. Lyons*, 2002-Ohio-3424, and trial counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution when it failed to provide the court with some information in an effort to comply with R.C. 2929.11(B).

Petitioner supplemented (with leave of court) the foregoing list by alleging that his appellate counsel also failed to argue:

> 5. The indictments were vague in violation of *Russell v. United*

7

> *States*, 369 U.S. 749 (1962) and *Valentine v. Huffman*, 285
> F.Supp.2d 1011 (N.D.Ohio 2003), where there was nothing
> to distinguish count 1 from count 2, and nothing to
> distinguish counts 3, 4, and 5 from one another; and

> 6.    The sentence imposed violated *Blakely v. Washington,* 542
> U.S. 296 (2004).

On June 28, 2005 the appellate court denied petitioner's application to reopen.

Petitioner appealed to the state supreme court the denial of his Rule 26(B) application,

alleging the following five propositions of law:

> **Proposition of Law No. I:** Appellant was denied his Sixth
> Amendment right to effective assistance of counsel on appeal and
> the deficient performance prejudiced the appeal to a complete
> review and denied appellant the probability of a new trial or
> sentence.

> **Proposition of Law No. II:** Appellant was denied his Sixth
> Amendment right to be confronted with the witnesses against him,
> where the declarant never appeared at trial to testify and the court
> permitted the declarant's mother, a social worker and other
> witnesses to relate what the alleged victim said in interviews.

> **Proposition of Law No. III:**  Appellant was denied Due Process
> of law when he was tried and convicted on an indictment which
> does not specify a date or distinguish between conduct on any given
> date.

> **Proposition of Law No. IV:** The trial court erred when it failed to
> comply with R.C. 2929.11(B), *State v. Comer*, 99 Ohio St.3d 463
> (2003), and *State v. Lyons*, 2002-Ohio-3424, and trial counsel was
> ineffective under the Sixth and Fourteenth Amendments of the U.S.
> Constitution when it failed to provide the court with some
> information in an effort to comply with R.C. 2929.11(B).

> **Proposition of Law No. V:** The record does not support the finding
> that Appellant is a sexual predator by clear and convincing
> evidence.

On October 12, 2005 the state supreme court denied petitioner leave to appeal and dismissed the

8

appeal as not involving any substantial constitutional question.  Petitioner did not appeal this decision to the United States Supreme Court.

On September 20, 2006 the petitioner filed the instant petition in which he raises the following five claims for relief:

    **A.**   **GROUND ONE:**  The convictions were obtained through the use of improper hearsay testimony from the state's witnesses in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution.

            **Supporting FACTS:** The alleged victim was a young girl of 4-5 years old– Mr. Rice's daughter.  The alleged victim did not testify but hearsay statements from the young girl were allowed into evidence through other states witnesses in violation of the 6th and 14th Amendments of the U.S. Constitution.

    **B.**   **GROUND TWO:**  Appellate counsel was ineffective under the 6th and 14th Amendments of the U.S. Constitution when he failed to raise numerous meritorious issues on direct appeal that would have resulted in a new trial, a lesser sentence and other relief.

            **Supporting FACTS:** Appellate counsel was ineffective when he failed to raise five issues on appeal that would have resulted in a new trial or a lesser sentence if the issues had been properly raised.  See 11.(a)(3) attached.[1]

    **C.**   **GROUND THREE:**  The trial court denied Mr. Rice Due Process under the Fourteenth Amendment of the U.S. Constitution when it prevented counsel from eliciting prior inconsistent statements made by the alleged victim.

            **Supporting FACTS:**  The trial court sustained the state's objections when counsel properly attempted to elicit prior inconsistent statements made by the alleged victim.

    **D.**   **GROUND FOUR:**   The trial court's erroneous jury

---

[1]The attachment to the petition set forth specific allegations of ineffective assistance of appellate counsel.

instructions concerning the offenses of rape in counts 2-5 denied Mr. Rice Due Process under the Fourteenth Amendment of the U.S. Constitution.

**Supporting FACTS:** The trial court erroneously defined the offenses of rape in counts 2-5 to the prejudice of Mr. Rice and in violation of the 14th Amendment of the U.S. Constitution.

E. **GROUND FIVE:** The evidence was insufficient to sustain the conviction under the 14th Amendment of the U.S. Constitution.

**Supporting FACTS:** The hearsay statements of the victim without any physical evidence to support them and without the victim testifying is insufficient to sustain the convictions of rape.

Petitioner amended his petition to include the following claim for relief:

F. **GROUND SIX:** Mr. Rice was denied Due Process under the Fourteenth Amendment of the federal constitution when he was tried and convicted on five counts of an indictment that violate *Russell v. United States* (1962), 369 U.S. 749 and *Valentine v. Konten* [sic], 395 F.3d 626 (6th Cir. 2005).

**Supporting FACTS:** Count 1 of the indictment charged the appellant with rape in August 2001; Counts 2, 3, 4, and 5 were for Rape in August of 2002. The Petitioner was convicted of all counts and the court imposed consecutive sentences on each count. There is nothing to distinguish counts 2-5 from each other. The convictions in counts 2-5 violate the Due Process Clause of the Fourteenth Amendment.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).

The respondent argues that part of petitioner's first claim for relief, as well as his third and fifth claims, are subject to dismissal as procedurally defaulted, in light of his failure to present

10

them to the state courts in the context of deprivation of federal constitutional rights.  Respondent

further contends that the fourth claim for relief is procedurally defaulted in light of the failure to

raise a contemporaneous objection at trial.  As for petitioner's sixth claim for relief, respondent

alleges that it is procedurally defaulted in light of his failure to present it as an independent claim

to any state court, having instead relied on it as one rationale for his ineffective assistance of

appellate counsel claim.

     The exhaustion doctrine requires that before filing a petition in federal habeas corpus a

defendant must utilize all available state remedies, through a motion or petition for review by the

state's highest court, by which he/she may seek relief based upon an alleged violation of

constitutional rights.  Granberry v. Greer, 481 U.S. 129, 133 (1987).  Under the exhaustion

doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts

before seeking relief in federal court.  Baldwin v. Reese, 541 U.S. 27 (2004);  Hannah v. Conley,

49 F.3d 1193, 1196 (6th Cir. 1995).  In so doing, state courts are afforded "one full opportunity to

resolve any constitutional issues by invoking one complete round of the State's established

appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

     Fair presentation of the factual and legal basis for a federal constitutional issue to the state's

courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis;
> (2) reliance upon state cases employing federal constitutional
> analysis; (3) phrasing the claim in terms of constitutional law or in
> terms sufficiently particular to allege a denial of a specific
> constitutional right; or (4) alleging facts well within the mainstream
> of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326

(6th Cir. 1987), cert. denied, 532 U.S. 958 (2001).  Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th

Cir. 2005); <u>Blackmon v. Booker</u>, 394 F.3d 399, 400 (6th Cir. 2004).  It is not enough to present the facts giving rise to the federal claim raised in habeas corpus;  a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim.  <u>Wong v. Money</u>, 142 F.3d 313, 322 (6th Cir. 1998).  Even if a claim is related, but distinct, the claim is nonetheless defaulted.  <u>Lott v.  Coyle</u>, 261 F.3d 594, 607, 619 (6th Cir.  2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim.  <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996), citing <u>Picard v. Connor</u>, 404 U.S. 270, 271 (1971) and <u>Anderson v. Harless</u>, 459 U.S. 4, 7 (1982).  For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim.  <u>Baldwin v. Reese</u>, <u>supra</u>.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and would be barred from pursuing relief on that claim in the state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that there would be no available state remedies to exhaust.  <u>Hannah v. Conley</u>, <u>supra</u> at 1195-96; <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994).   Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief.  <u>See</u>, <u>Collins v. Perini</u>, 594 F.2d 592, 593 (6th Cir. 1978).  However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal.  <u>Gray v. Netherland</u>, <u>supra</u> at 162;  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51 (1991); <u>Deitz v. Money</u>, 391 F.3d 84, 808 (6th Cir. 2004).

In petitioner's first claim for relief he challenges the admission into evidence by the trial court of testimony of his daughter's mother and social worker pertaining to statements made by his daughter, which he alleges violated his right to confrontation guaranteed by the Sixth Amendment.

The respondent does not allege procedural default with regard to admission of his daughter's statements made to her mother, as those statements were challenged in the state courts. Respondent does challenge as procedurally defaulted that portion of the first claim directed to the admission of the victim's statements to her social worker, arguing that petitioner's arguments to the state courts on this issue were framed as violations of state law with no reference to federal constitutional issues.

This Court has reviewed the argument presented to the state appellate court on the challenge to the admission of the testimony of his daughter's social worker and finds that the argument was based entirely on state law without any reference to federal constitutional issues. However, petitioner did rely on State v. Chappell, 97 Ohio App.3d 515, 531, 646 N.E.2d 1191 (Ct.App. Cuyahoga Count 1994), a case in which the court cited to the Sixth Amendment in determining when a social worker's statement was admissible into evidence, without mentioning that particular portion of the Chappell opinion.  Petitioner also relied entirely on state law in his arguments to the supreme court, despite having articulated in the proposition of law statement that his federal constitutional rights had been violated.  That having been said,  this Court believes that petitioner's citation to the Chappell case constitutes reliance on a state case employing federal constitutional analysis on the issue of admissibility of the hearsay testimony of the social worker, which in turn satisfies the requirement of having fairly presented this issue to the state courts.

13

Consequently, this Court rejects respondent's argument that this issue has been procedurally defaulted.

The same is not true of petitioner's third claim for relief, in which he challenges the trial court's ruling sustaining a prosecution objection to defense counsel's question to the victim's mother concerning an allegedly inconsistent statement made by the victim.  He argued this to the state appellate court purely as a matter of state law, and the court treated it in that manner.  Once again, in his brief to the supreme court he repeated the same argument raised below, despite having articulated in the proposition of law statement that his federal constitutional rights had been violated.  Therefore, this Court finds that, this claim for relief has been procedurally defaulted, and there has been no showing of cause and prejudice as regards this specific claim.

Respondent also contends that petitioner's fourth claim for relief, in which he alleges that the trial court erroneously instructed the jury on the definition of rape, was procedurally defaulted in light of the finding by the court on direct appeal that petitioner failed to raise a contemporaneous objection to this issue at trial.  Despite having so found, the appellate court reviewed this claim under a plain error standard, as provided for under Rule 52(B) of the Ohio Rules of Criminal Procedure, and found no plain error as the claimed error did not affect the outcome of the trial.

As it is the task of this federal court to only consider claims which were adjudicated on the merits in the state courts, it generally may not address claims which were not substantively analyzed by the state courts, either due to failure to raise them before the state courts while a remedy was available or due to a state procedural rule precluding merits review of such claim.  Claims which fall into that category are procedurally defaulted and may not be considered on federal habeas review.  Lancaster v. Adams, 324 F.3d 423, 436 (6th Cir. 2003), citing Seymour v.

14

Walker, 224 F.3d 542, 549-50 (6th Cir. 2000).

The Sixth Circuit Court of Appeals has delineated a four-part test for determining whether a habeas petitioner's claim is procedurally defaulted by the failure to observe a state procedural rule.  First, the district court must determine whether there exists a state procedural rule with which the petitioner failed to comply.  Then the court must determine whether the state court enforced the sanction for failure to comply.  If so, it must next be decided whether failure to comply with the state procedural rule constitutes an adequate and independent ground for barring review of the federal constitutional claim.  If all these questions are answered in the affirmative, the petitioner must satisfy the requirements set forth in Wainwright v. Sykes, 433 U.S. 72, 138 (1977) that he demonstrate cause for having failed to follow the procedural rule in question and that he was actually prejudiced by the alleged constitutional error.  Greer v. Mitchell, 264 F.3d 663, 672-73 (6th Cir. 2001), cert. denied, 535 U.S. 940 (2002);  Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986).  Accord, Lancaster v. Adams, supra at 436.

Applying the four-part analysis to the foregoing, petitioner failed to comply with Ohio's contemporaneous objection rule,[2] and no plain error was found.  Ohio courts enforce the contemporaneous objection rule, and to the extent that the state appellate court did so that was an adequate and independent ground on which the court could rely to preclude merits consideration of the claims.  Consequently, petitioner is required to show cause for the procedural error and actual prejudice to his case, which he has not done on this particular issue, so that it must be concluded that procedural default applies.

Next respondent argues that petitioner's fifth claim for relief, in which he alleges that his

---

[2]That rule can be found in State v. Campbell, 69 Ohio St.3d 38, 630 N.E.2d 339 (1994).

convictions were based on insufficient evidence, has been procedurally defaulted in light of the fact that petitioner simply argued this claim to the state courts as having been against the manifest weight of evidence.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution.  Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994).  A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.  See, Floyd v. Alexander, 148 F.3d 615, 619 (6th Cir.), cert. denied, 525 U.S. 1025 (1998);  Serra v. Michigan Dep't of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993), cert. denied, 510 U.S. 1201 (1994).  It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Accord, Duffel v. Dutton, 785 F.2d 131, 133 (6th Cir. 1986).

A claim that a conviction was against the manifest weight of the evidence presents a question of state law and does not raise a question of violation of a federal constitutional right.  Tibbs v. Florida, 457 U.S. 31, 47 (1982); Johnson v. Havener, 534 F.2d 1232, 1234 (6th Cir. 1976).

The state courts addressed this purely as a matter of state law and held

> The pediatric nurse practitioner testified that the absence of physical signs of sexual trauma in a young child is not unusual.  She explained that their tissues have an elasticity and an ability to heal that may preclude objective observation, depending on the timing and thoroughness of the medical examination. D, however, testified that after the victim's initial disclosure, she occasionally observed swelling and redness in the victim's genital area.
>
> The victim, moreover, gave consistent versions of the acts perpetrated upon her to each of the adults who questioned her.  Her

16

sexual knowledge seemed to have increased over the year between the first disclosure and the next ones. Additionally, the circumstances that surrounded her disclosures indicated the victim lacked either a reason or the ability to lie about the incidents.

Appellant's evidence, on the other hand, lacked credibility. His attempts to discredit D seemed contrived, since he could provide no motive for D to accuse him of "nasty" acts with the victim. During his testimony on cross-examination, his best explanation for the victim's disclosures was that she developed "confusion" after observing him engage in sexual intimacies with D. Subsequently, however, he unguardedly described the victim not as a baby, but, rather, as his "little lady;" he appeared to flounder when he realized the implication of what he had said.

Based upon the record, the jury acted well within its prerogative in believing the state's witnesses rather than accepting appellant's weak attempt to discount the victim's disclosures. The verdicts, therefore, are not against the manifest weight of the evidence.

(Citations omitted.)

This Court finds that this allegation of violation of state law fails to rise to the level of a denial of fundamental fairness and, therefore, is not cognizable in federal habeas corpus.

Respondent also argues that petitioner's sixth claim for relief, included in a supplement to the petition, in which he challenges the specificity of the indictment, is subject to dismissal as procedurally defaulted in light of the fact that petitioner never presented it as an independent claim to any state court, instead presenting it as a rationale in support of his argument in his Rule 26(B) application to reopen his appeal that he had been denied the effective assistance of appellate counsel in light of counsel's failure to raise it as an issue on appeal.

This Court agrees that petitioner has clearly failed to raise this claim for relief to any state court and that he would now be barred from raising it in a delayed appeal or in a petition for post-conviction relief, so that there would be no remaining avenues for exhaustion of the claim. That

17

being so, petitioner is required to show cause for the failure to fairly present this claim to the state courts and actual prejudice to his defense at trial or on appeal.

Petitioner has completely omitted his sixth claim for relief in his brief captioned "Traverse to Respondent's Return of Writ," which leads this Court to deem it abandoned as well as procedurally defaulted.

In summary, this Court agrees with respondent's assertion that petitioner's third, fourth, fifth and sixth claims for relief are procedurally defaulted, but finds that the challenged portion of his first claim for relief is not procedurally defaulted.

Procedural default aside, if the merits of petitioner's claims are considered the petition must nonetheless fail.

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). A state court adjudication is deemed as being "contrary to" Supreme

18

Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." A state court adjudication is deemed as involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court...as of the time of the relevant state-court decision;" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520.  In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable. Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000), citing Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 121 S.Ct. 808 (2001).

In his first claim for relief petitioner challenges the trial court's admission into evidence of the testimony of the victim's mother and of the victim's social worker regarding statements made by the victim. Similarly, in his third claim for relief the petitioner challenges the trial court's refusal to admit the testimony of the victim's mother regarding statements made by the victim which the defense maintained were prior inconsistent statements.

19

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994). As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus. Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000), cert. denied, 531 U.S. 1082 (2001). Under the AEDPA the states have wide latitude in ruling on evidentiary matters. Seymour v. Walker, 224 F.3d 542 (6th Cir. 2000), cert. denied, 532 U.S. 989 (2001). In considering petitioner's habeas corpus petition, a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Sanders v. Freeman, 221 F.3d 846 (6th Cir. 2000).

The United States Supreme Court has held that in order for the exclusion of evidence to be deemed unconstitutional, such exclusion must have "significantly undermined fundamental elements of the accused's defense." United State v. Scheffer, 523 U.S. 303, 315 (1998). The Sixth Circuit Court of Appeals upheld the denial of a petition for writ of habeas corpus premised upon an allegation of unconstitutional exclusion of evidence and opined that the foregoing ruling by the Supreme Court should not be read to mean that a petitioner's constitutional rights are violated whenever a state court has excluded evidence believed by petitioner to have been at the heart of the defense, but rather stands for the proposition that such constitutional rights are violated "when a state court excludes important evidence on the basis of an arbitrary, mechanistic, or per se rule, or one that is disproportionate to the purposes it is designed to serve." Alley v. Bell, 307 F.3d 380, 393 (6th Cir. 2002). Where a state court makes an individual assessment as to the evidence and makes a ruling

20

which complies with the foregoing, such as the state court did in <u>Alley v. Bell</u>, <u>supra</u> at 396, then the writ will not be granted.

In the present case the state appellate court rejected petitioner's challenges to the admissibility of the testimony of the victim's mother and social worker, holding in pertinent part:

> In all of these assignments of error, appellant challenges evidentiary rulings made by the court during his trial.  The admission or exclusion of evidence, however, is a matter left to the trial court's sound discretion and will not be disturbed absent an abuse of that discretion.  *State v. Lundy* (1987), 41 Ohio App.3d 163, 169.
>
> Appellant first challenges the trial court's decision, pursuant to Evid.R. 803(2), the "excited utterance" exception to the hearsay rule, to permit D [the victim's mother] to testify about statements made to her by the victim.  Appellant asserts the statements lacked the context of a time frame for the "startling event," so they could not meet the test of admissibility.  This court disagrees.
>
> There is no per se length of time following the occurrence after which a statement may no longer qualify as an excited utterance. *State v. Taylor* (1993), 66 Ohio St.3d 295, 303; see also, *State v. Duncan* (1978), 53 Ohio St.2d 215, 219.  Moreover, in the case of young children, the requirements for admission have been liberalized on the principle that these declarants have limited reflective powers and are likely to remain in a state of nervous excitement longer than would an adult.  *State v. Taylor,* supra.
>
> In this case, the four-year-old victim made the first statement when she was on the toilet.  She obviously was uncomfortable during the process, and her discomfort prompted her to complain that appellant had "stuck his finger" inside her.  The circumstances thus indicated both the freshness of the event and the fact that the victim remained under its stress.  *State v. Sanders* (June 21, 1990), Cuyahoga App. No. 56977.
>
> Similarly, the record reflects the victim made the other statements with spontaneity under circumstances that established the requisite time frame and mental state to qualify under this exception to the hearsay rule.  *State v. Walker*, Cuyahoga App. Nos. 79586, 79695, 2002-Ohio-3265.  Consequently, the trial court properly admitted the statements.  *In the Matter of Michael* (1997), 119 Ohio App.3d

112.

Appellant next challenges the trial court's decision, pursuant to Evid.R. 803(4), the "medical treatment" exception to the hearsay rule, to permit Altier to testify about statements made to her by the victim. Appellant asserts since Altier did not function as a medical person, the statements were inadmissible. Once again, this court disagrees.

Altier stated that her investigation of allegations of sexual abuse is primarily for the purpose of determining whether "medical attention" or "psychological help" is indicated for the victim. She stated she cannot make an assessment of the services that might be necessary without conducting interviews. She further indicated she could not label the victim's accounts "substantiated" after the initial interviews, but the "red flags" she noted caused her to refer the case for further management; subsequent interviews, however, caused her to refer the victim for "sex abuse" treatment at a facility that specialized in it, viz., the "Care Clinic at UH." Since Altier provided the requisite basis for the admissibility of the evidence, the trial court did not abuse its discretion in this case. *State v. Dever* (1992), 64 Ohio St.3d 401, 414; *State v. Kurpik,* Cuyahoga App. No. 80468, 2002-Ohio-3260; *State v. Chappell* (1994), 97 Ohio App. 3d 515, 531.

The court also disagreed with petitioner's contention that the trial court improperly excluded the testimony of the victim's mother regarding statements the victim had made which the defense deemed to have been "prior inconsistent statements," holding:

Appellant lastly challenges the exclusion of testimony from [the victim's mother] concerning statements made by the victim to "University Hospital." Appellant asserts the statements implicated [the victim's mother's] oldest son as the possible perpetrator rather than himself, and thus qualified as "inconsistent" pursuant to Evid.R. 806. Appellant's challenge is rejected.

The record reflects the statements were not made to [the victim's mother], but, instead, to Lauren McAliley, a University Hospital pediatric nurse practitioner. The record further reflects that McAliley testified she asked the victim if "anyone else had ever touched her koo-koo," a question to which the victim answered affirmatively, and added that her brother "Terry" had.

22

> Clearly, the victim's statement that another perpetrator may have abused her was neither inconsistent with her previous declarations about appellant, nor inappropriately excluded by the trial court. Consequently, appellant's assertion has no merit.

The foregoing rulings of the state appellate court are premised entirely on application of state law, as well as on factual determinations entitled to a presumption of correctness which can only be rebutted by clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).  Nothing in those rulings was contrary to rulings of the United State Supreme Court on a similar question of law, nor did the state courts decide the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Consequently, there is nothing in those rulings which would lead this Court to find that there has been an infringement of a right guaranteed by the United States Constitution. Petitioner's first and third claims for relief, therefore, are without merit.

In his second claim for relief petitioner contends that he was denied the effective assistance of appellate counsel by reason of counsel's failure to raise the following five issues on appeal:

1. The trial court erred in failing to hold a competency hearing under Evid.R. 601 and the Fourteenth Amendment of the U.S. Constitution when the child declarant was 4 or 5 years old, suffered from cerebral palsy and had difficulty communicating verbally.

2. The trial court erred in failing to hold a hearing under Evid. R. 807 when counsel requested a hearing before trial and thus violated Mr. Rice's right to Due Process under the Fourteenth Amendment of the U.S. Constitution and his right to confrontation under the Sixth Amendment of the U.S. Constitution.

3. (A) Evid R. 803(2), (4) and Evid R. 807 violate the confrontation clause of the Sixth Amendment of the U.S. Constitution under Crawford v. Washington, 124 S.Ct. 1354 (2004).

23

(B) Trial counsel was ineffective under the Sixth and Fourteenth Amendments for failing to challenge to [sic] constitutionality of Evid. R. 803.

4.    The trial court erred when it failed to comply with R.C. 2929.11(B) State v. Comer, 99 Ohio St.3d 463 (2003) and State v. Lyons, 202 Ohio 3424 and trial counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution when he failed to provide the court with some information in an effort to comply with R.C. 2929.11(B).

5.    The record does not support the finding that Mr. Rice is a sexual predator by clear and convincing evidence.

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair.  Strickland v. Washington, 466 U.S. 668 (1984).  See also, United States v. Bavers, 787 F.2d 1022 (6th Cir. 1985).  Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy, Strickland, 466 U.S. at 689.  Accord, Wilson v. Yukins, unreported, 1999 U.S.Dist. LEXIS 7644 (E.D.Mich. 1999).   The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability.  Kimmelman v. Morrison, 477 U.S. 365 (1986).

The Sixth Amendment right to effective assistance of counsel extends to appellate counsel on direct appeal of a criminal conviction.  Evitts v. Lucey, 469 U.S. 387 (1985).  The Sixth Circuit Court of Appeals has held that:

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

McMeans v. Brigano, 228 F.3d 674, 682 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (Citations omitted.). The failure of appellate counsel to assert claims on appeal cannot rise to the level of denial of a constitutional right unless such failure was so ill-advised as to have caused petitioner to effectively have been without counsel. Burton v. Renico, 391 F.3d 764 (6th Cir. 2004). A petitioner asserting appellate counsel's failure to raise unasserted claims will not be able to establish such a showing even if the unasserted claims are deemed not to have been frivolous, if those claims are without merit. Ibid.

Under the AEDPA this Court must first determine whether the state court's application of the Strickland standard was objectively unreasonable. Alley v. Bell, 307 F.3d 380, 400 (6th Cir. 2002), quoting Bell v. Cone, 152 L.Ed.2d 914, 122 S.Ct. 1843, 1852 (2002) ("under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." (Citation omitted.)).

In its June 28, 2005 opinion denying petitioner's Rule 26(B) application to reopen his direct appeal, the state appellate court rejected petitioner's claims of ineffective assistance of appellate counsel, holding in pertinent part:

> In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance

25

was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 111 L.Ed.2d 768, 110 S.Ct. 3258.

In *Strickland* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 104 S.Ct. At 2065.

\* \* \* \* \*

Furthermore, appellate counsel is not deficient for failing to anticipate developments in the law or failing to argue such an issue.

In the present case Rice's claims of ineffective assistance of appellate counsel are not well taken.

Rice first submits that his appellate counsel should have argued that the trial court erred by not holding a competency hearing for the victim. Although the victim did not testify, her incriminating evidence was presented through the hearsay testimony of her mother and a social worker.

\* \* \* \* \*

In the instant case defense trial counsel sought to determine the competency of the victim, but the trial court denied the request as moot, because the state had decided not to call the victim. Rice now argues that determining competency was a threshold requirement, especially considering the victim's limitations and the lack of corroborating physical evidence. Had appellate counsel raised this issue, Rice would have obtained a reversal to fulfill this basic evidentiary requisite.

\* \* \* \* \*

26

The trial court allowed the mother to testify about the victim's statements under the excited utterance exception.  Appellate counsel in the exercise of professional judgment decided to attack this hearsay directly in his first assignment of error, rather than indirectly through the competency argument: "The court allowed impermissible hearsay testimony from the alleged victim's mother in violation of Ohio Rule of Evidence 803(2), the Fifth, Sixth, Eighth and Fourteenth Amendment to the U.S. Constitution and Article I, Section 9 and 16 of the Ohio Constitution."  Given the Supreme Court's language in [*State v.*] *Said* and [*State v.*] *Boston*, appellate counsel was not deficient in his strategy and tactics.  Moreover, Rice has not established prejudice.  After reviewing the record, this court concluded that the victim performed well academically and had no difficulty in expressing herself.  Thus, an ultimate finding of incompetency and the exclusion of the evidence seems unlikely.

The trial court also admitted the victim's declarations into evidence through the testimony of the social worker under Evid.R.  803(4), Statements for purposes of medial diagnosis or treatment.  *State v. Wilson* (Feb. 18, 2000), Adams App.No. 99CA672, 2000 Ohio App. LEXIS 677 addressed the same issue.  In that case the trial court, pursuant to Evid.R. 803(4), admitted social workers' reports on a child abuse victim.  On appeal Wilson argued that the trial court erred because it failed to determine that the child victim was competent when she talked to the social workers.  The Fourth District Court of Appeals rejected that argument and ruled that Evid.R.  803(4) has no prerequisite of determining whether a declarant is competent to testify.

* * * * *

Given this authority in opposition to the *Said* argument, appellate counsel was not deficient for directly attacking the hearsay from the social worker in the second assignment of error, instead of indirectly through the competency argument.

Rice's second argument is that the trial court erred in failing to hold a competency hearing under Evid.R. 807 when trial counsel requested one before trial.  This argument is baseless.  The prosecuting did not rely on Evid.R. 807 as the hearsay exception through which the state would admit the victim's statements; the prosecution relied on other exceptions.  Therefore, Evid.R. 807 was irrelevant to the case, and appellate counsel properly rejected this

argument.

Rice next argues that Evid.R. 803(2) and (4) and Evid.R. 807 violate the confrontation clause of the Sixth Amendment of the U.S. Constitution under *Crawford v. Washington,* supra.  However appellate counsel cannot be considered ineffective for not arguing *Crawford*.  He submitted his brief on August 6, 2003, and this court decided the case in December 2003.  *Crawford* was not decided until 2004.  Thus, it was impossible for appellate counsel to rely on *Crawford* in forming his appellate arguments.

As noted earlier, appellate counsel is not deficient for failing to anticipate developments in the law or in failing to argue developing issues.  Thus, appellate counsel was not ineffective for failing to challenge the constitutionality of Evid.R. 803.  Moreover, this court notes that appellate counsel attacked the hearsay statements as not qualifying for the exceptions under Evid.R. 803; he also submitted that Rice was denied his right to cross-examine the declarant, because she never testified.  Pursuant to the admonitions of the U.S. and Ohio Supreme Courts, this court will not second-guess appellate counsel's strategy and tactics.

Similarly, Rice now attacks his sentence under *Blakely v. Washington*, supra.  The United States Supreme Court did not decide *Blakely* until 2004, and therefore, appellate counsel could not have relied on it in 2003.

Rice's next argument is that the trial court did not comply with R.C. 2929.11(B), which provides that the sentence imposed should be consistent with sentences imposed for similar crimes by similar offenders.  The trial court imposed five consecutive sentences of ten years to life.  However, the trial court made no effort to show that such a harsh sentence was imposed on other child rapists who had never previously been to prison.  Additionally, Rice relies upon *State v. Lyons*, Cuyahoga App. No. 80220, 2002 Ohio 3424, and *State v. Johnson*, Cuyahoga App. No. 80857, 2003 Ohio 1848, for the principle that the trial court has the responsibility to have the necessary information before it to ensure compliance with this statute.  As a variant on this argument, Rice complains that his trial counsel should have supplied the court with information showing that his sentence was disproportionately harsh.

* * * * *

The goal of R.C. 2929.11(B) is to achieve consistency not

28

uniformity, and consistency is achieved by the weighing of the statutory factors. Given the developments, limitation, and conflicting opinions in this area of the law, this court rules that appellate counsel was not deficient for failing to argue consistency.

Additionally, this court notes appellate counsel may also have avoided this argument because it appears that harsh sentences for child molesters are not uncommon. In *State v. Mayes*, Cuyahoga App. No. 82529, 2004 Ohio 2014, this court upheld consecutive sentences for a child molester against a R.C. 2929.11(B) argument. This court ruled, inter alia, that the "trial court's total order of sentence in this case, moreover, is proportionate to others reviewed by this court in similar cases; therefore, it will not be disturbed....Even in *Valentine v. Huffman* (N.D.Ohio 2005), 285 F.Supp.2d 1101, upon which Rice relies for his next argument, the court sentenced the child molester to forty consecutive life sentences.

* * * * *

Rice's last argument is that the record does not support the finding by clear and convincing evidence that he is a sexual predator. A review of the record reveals why appellate counsel chose not to argue the sexual predator classification. This was the second conviction against Rice for sexual abuse against a child. The trial court also found that Rice showed no remorse, was unbelievable, and tried to play the jury. The evidence that he begged for help, but then never sought it, and the escalating nature of the sexual offenses against his own, physically-impaired, four-year-old daughter, intuitively indicate that he is a predator. Appellate counsel was not deficient for avoiding this argument.

(Citations omitted.)

This Court finds that the state appellate court's conclusion that the petitioner's appellate counsel's failure to raise on appeal five specific issues did not rise to the level of ineffective assistance of counsel was not an objectively unreasonable application of <u>Strickland</u> to the facts of this case, nor was it an unreasonable determination of the facts in light of the evidence presented, particularly considering the strong evidence against petitioner which would undermine petitioner's claims of prejudice. As a consequence, petitioner's claim of ineffective assistance must fail.

In his fourth claim for relief petitioner challenges the trial court's instructions of law to the jury on the definition of rape.

Issues regarding jury instructions are normally considered to be matters of state law not cognizable in federal habeas corpus.  Brazzell v. Smith, unreported, Case No. 98-1757, 1999 U.S. App. LEXIS 32248, *9 (6th Cir. December 7, 1999), citing Henderson v. Kibbe, 431 U.S. 145 (1977); Herrington v. Edwards, unreported, Case No. 97-3542, 1999 U.S.App. LEXIS 1220, *18-19 (6th Cir. January 26, 1999), citing numerous cases.  Accord, Mitzel v. Tate, 59 F.Supp.2d 705, 719 (N.D.Ohio 1999)(Judge Economus), affirmed, 267 F.3d 524 (6th Cir. 2001), citing Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988) and Eberhardt v. Bordenkircher, 605 F.2d 275, 276 (6th Cir. 1979).  In order to amount to a constitutional violation the challenged jury instruction must have "infected the accused's trial to such a degree as to constitute a clear violation of due process."  Estelle v. McGuire, 502 U.S. 62, 72 (1991), quoting Cupp v. Naughton, 414 U.S. 141, 147 (1973).  Accord, Brazzell v. Smith, supra at *9 and Herrington v. Edwards, supra.   If an instruction is ambiguous (but perhaps not erroneous) a due process violation occurs only if it is determined that there is a "`reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  Estelle v. McGuire, supra at 73, n.4 (quoting Boyde v. California, 494 U.S. 370, 380 (1990).  Accord, Brazzell v. Smith, supra at *9 and Herrington v. Edwards, supra at *19.  In that regard, in determining whether habeas corpus relief is warranted the emphasis must be upon the effect of any error on the jury, as opposed to sufficiency of the evidence.  Herrington v. Edwards, supra, citing Kotteakos v. United States, 328 U.S. 750, 755, 763-65, 767, 775-76 (1946).

Absent proof of an erroneous instruction, petitioner cannot meet the overall burden of

showing that the state court ruling was either contrary to or involved an unreasonable application of federal law.[3]

Petitioner claims in this claim that the trial court improperly instructed the jury that rape involved sexual contact, but not sexual conduct. The state appellate court rejected this argument, holding in pertinent part:

> In making this argument, appellant must acknowledge the jury properly was instructed on count one, and, further, appellant must assert the trial court's failure amounted to plain error since defense counsel raised no objection to the instructions.
>
> Conversely, in considering appellant's argument, this court must view the instructions in the context of the overall charge, and must remain mindful that "the plain error rule is *** applied with utmost caution and invoked only under exceptional circumstances***."
>
> The trial court accurately set forth the elements of count one, specifically stating the offense required sexual conduct, and then immediately followed with:
>
>> "Before you can find the defendant guilty under counts two, three, four and five, and/or five, you must find beyond a reasonable doubt that during August of 2002, and in Cuyahoga County, Ohio, the defendant engaged in sexual contact with Jane Doe, not his spouse, whose age at the time of the said sexual conduct was under 13 years***." (Emphasis added.)
>
> The trial court thereupon accurately distinguished sexual conduct from sexual contact.
>
> Later, the trial court gave an instruction on the lesser offense of gross sexual imposition. It differentiated this offense by stating it was "distinguished from rape in that [it] involves sexual contact as opposed to sexual conduct." (Emphasis added.) Those two legal

---

[3]It is only when such an error is shown that it is necessary to engage in harmless error analysis. Brazzell v. Smith, supra, citing Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) and Gilliam v. Mitchell, 179 F.3d 990, 995 (6th Cir. 1999), cert. denied, 528 U.S. 1120 (2000). See, Neder v. United States, 527 U.S. 1 (1999).

> terms at that point again were defined for the jury.  During its subsequent deliberations, the jury presented no questions relating to these differences.
>
> Viewed in context, therefore, it is impossible to declare the trial court's single misstatement during its instructions to the jury amounted to plain error.  *State v. Price* (1979), 60 Ohio St.2d 136, paragraph four of the syllabus.  Appellant's fourth assignment of error, accordingly, also is overruled.

There is nothing in the foregoing to indicate that the trial court's instructions to the jury were erroneous, particularly since the terms "conduct" and "contact" were distinguished by the court.  Absent evidence of error, petitioner has failed to meet his burden of showing that the state court ruling was either contrary to or involved an unreasonable application of federal law.  It follows that petitioner's fourth claim for relief must fail.

In his fifth claim for relief the petitioner challenges the sufficiency of the evidence relied upon to convict him at trial.

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Accord</u>, <u>McKenzie v. Smith</u>, 326 F.3d 721, 727 (6th Cir. 2003); <u>Matthews v. Abramajtys</u>, 319 F.3d 780, 788 (6th Cir. 2003).  In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses.  <u>Herrera v. Collins</u>, 506 U.S. 390, 401-402 (1993); <u>Jackson v. Virginia</u>, 443 U.S. at 319, n.13; <u>Brown v. Davis</u>, 752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d) in that questions of sufficiency of

32

the evidence are mixed questions of law and fact upon which a writ may be granted only if the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2).  Starr v. Mitchell, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court reviewed petitioner's claims that he was convicted without sufficient proof and held in pertinent part as follows:

> Appellant argues the evidence cannot support his convictions, essentially on the basis that the victim's descriptions of the several sexual acts were uncorroborated.  Appellant appears to posit that without medical signs of trauma, the disclosures of such a young child lacked reliability pursuant to the guidelines set forth in *State v. Mattison* (1985), 23 Ohio App.3d 10.  Appellant's argument is unpersuasive.

> In *Mattison*, this court suggested several factors should be considered in reviewing whether a jury's decision is against the manifest weight of the evidence.  However, the stated factors were merely "guidelines" rather than "hard and fast rules."

> Moreover, since that decision, the Ohio Supreme court has determined that the relevant test to be applied was set forth earlier by the appellate court in *State v. Martin* (1983), 20 Ohio App.3d 172.  See *State v. Thompkins*, 78 Ohio St.3d 380, at 387, 1997-Ohio-52.  Thus, this court must determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way," creating "a manifest miscarriage of justice."  This case does not approach that standard.

> The pediatric nurse practitioner testified that the absence of physical signs of sexual trauma in a young child is not unusual.  She explained that their tissues have an elasticity and an ability to heal that may preclude objective observation, depending on the timing and thoroughness of the medical examination. [The victim's mother], however, testified that after the victim's initial disclosure,

33

she occasionally observed swelling and redness in the victim's genital area.

The victim, moreover, gave consistent versions of the acts perpetrated upon her to each of the adults who questioned her. Her sexual knowledge seemed to have increased over the year between the first disclosure and the next ones.  Additionally, the circumstances that surrounded her disclosures indicated the victim lacked either a reason or the ability to lie about the incidents.

Appellant's evidence, on the other hand, lacked credibility.  His attempts to discredit [the victim's mother] seemed contrived, since he could provide no motive for [the victim's mother] to accuse him of "nasty" acts with the victim.  During his testimony on cross-examination, his best explanation for the victim's disclosures was that she developed "confusion" after observing him engage in sexual intimacies with [the victim's mother].  Subsequently, however, he unguardedly described the victim not as a baby, but, rather, as his "little lady;" he appeared to flounder when he realized the implication of what he had said.

Based upon the record, the jury acted well within its prerogative in believing the state's witnesses rather than accepting appellant's weak attempt to discount the victim's disclosures.  The verdicts, therefore, are not against the manifest weight of the evidence.

(Citations omitted.)

The state appellate court found the evidence sufficient to prove the elements of the crimes charged.  In so doing, the state appellate ruling, which relied entirely on state authorities, neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.  That being so, petitioner's fifth claim for relief is without merit.

In light of all the foregoing, it is recommended that the petition be dismissed without further proceedings.

34

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:    July 9, 2007

## OBJECTIONS

     Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).